## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| | ) | |
| v. | ) | JURY DEMAND |
| | ) | |
| MORNINGSTAR PROPERTIES, LLC | ) | |
| d/b/a Morningstar Storage, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## COMPLAINT

1.      The United States of America (the "United States") alleges that
Morningstar Properties, LLC d/b/a Morningstar Storage ("Morningstar")
violated the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. §§ 3901-4043,
by auctioning off the belongings of at least three active duty servicemembers
without the required court orders.

2.      The purpose of the SCRA is to provide certain protections to
servicemembers so that they can devote their entire energy to the defense needs
of the nation. *See* 50 U.S.C. § 3902. One of those protections is the requirement
that a court review and approve any action to foreclose or enforce a lien on the
property or effects of a servicemember during any period of military service of

the servicemember and for 90 days thereafter. *See* 50 U.S.C. § 3958.

3.     In a proceeding to foreclose or enforce a lien against a servicemember, the court may stay the proceeding for a period of time as justice and equity require, or it may adjust the obligation. *See* 50 U.S.C. § 3958. The court may also appoint an attorney to represent the servicemember, require the lienholder to post a bond with the court, and issue any other orders it deems necessary to preserve the interests of all parties. *See* 50 U.S.C. § 3931.

4.     When a storage company fails to obtain a court order prior to auctioning off a servicemember's possessions, that servicemember is deprived of their rights under the SCRA, including the opportunity to have a court postpone the sale or adjust the amount of the fees charged to the servicemember.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this action under 28 U.S.C. § 1331, 28 U.S.C. § 1345, and 50 U.S.C. § 4041.

6.     Venue is proper in this judicial district under 28 U.S.C. § 139l(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in the Middle District of Florida and a substantial part of property that is the subject of the action is situated in the Middle District of Florida.

**MORNINGSTAR PROPERTIES, LLC d/b/a MORNINGSTAR STORAGE**

7.      Morningstar is a North Carolina limited liability company organized and existing under the laws of the state of North Carolina with a principal place of business in Matthews, North Carolina.

8.      Morningstar is a vertically-integrated real estate developer, owner, and operator of specialty real estate products, focused primarily on self-storage facilities and marinas in the Southeastern United States.

9.      Morningstar manages and operates a network of self-storage facilities under the brand name Morningstar Storage, including self-storage facilities located at: (1) 9234 Causeway Boulevard, Tampa, Florida, 33619 (the "Causeway Facility"); (2) 2201 Golf Club Drive, DeLand, Florida 32724 (the "DeLand Facility"); and (3) 4411 Hard Scrabble Road, Columbia, South Carolina 29229 (the "Hardscrabble Facility").

10.      The Causeway Facility is located approximately 17 miles from MacDill Air Force Base and U.S. Central Command (CENTCOM) in Tampa, Florida.

11.      Prior to August 2022, the Causeway Facility was managed and/or operated by CubeSmart Asset Management, LLC.

12.      The DeLand Facility is located approximately 30 miles from U.S. Coast Guard Station Ponce de Leon in New Smyrna Beach, Florida.

13.     The Hardscrabble Facility is located approximately 12 miles from the U.S. Army Training Center at Fort Jackson, South Carolina.

## FACTUAL ALLEGATIONS

14.     Morningstar owns, manages, and operates self-storage facilities in the Southeastern United States.

15.     Under the laws of the states in which it operates, Morningstar is entitled to enforce liens on personal property located in its self-storage facilities for unpaid storage fees and other charges.

16.     In the regular course of business, Morningstar forecloses or enforces its liens against personal property located in its self-storage facilities by auctioning or otherwise disposing of the property.

17.      In its Storage Operations Manual, Morningstar acknowledges that military customers "have a special set of guidelines. They are protected by the Service Members Civil Relief Act[sic]. This Act provides them protection from foreclosure actions[.]"

18.     Even though it recognized that the SCRA protected servicemembers from foreclosure, Morningstar failed to implement policies or procedures that would identify SCRA-protected servicemembers and prevent their property and effects from being auctioned or otherwise disposed of.

4

19.     The Department of Defense Manpower Data Center ("DMDC") maintains a free public website with a database that anyone seeking to comply with the SCRA can search to determine an individual's military status using the individual's last name and Social Security number or date of birth. A DMDC certificate showing the individual's military status can be printed after a search of the DMDC database, thereby proving that the database was searched on a particular date.

20.     Morningstar did not ask customers to provide their date of birth or social security number when signing a storage agreement.

21.     Morningstar's standard storage agreement contains a provision requiring that "[i]f you are in military service you must provide written notice to the Owner." However, Morningstar's standard storage agreement does not have any place for the customer to indicate or disclose their military service, and the agreement does not specify any form, address, or other mechanism by which the customer is to provide written notice of military service.

22.     Morningstar did not require employees to perform a DMDC database search to determine a customer's military status prior to auctioning or otherwise disposing of the customer's property.

23.     Morningstar did not require its employees to review a customer's file, contract, or communications for evidence of military service prior to auctioning or otherwise disposing of the customer's property.

24.     Morningstar did not require employees to visually inspect units for military uniforms, awards, equipment, or other evidence of military service prior to auctioning or otherwise disposing of a customer's property.

### *U.S. Air Force Staff Sergeant Stephanie Acevedo*

25.     From September 29, 2015 to the present, Staff Sergeant (SSgt) Stephanie Acevedo has been on full-time duty in the active military service of the United States Air Force.

26.     On or about July 8, 2022, while stationed at MacDill Air Force Base in Tampa, Florida, SSgt Acevedo entered into a Florida Self-Storage Rental Agreement (the "Storage Agreement") with CubeSmart Asset Management, LLC ("CubeSmart").

27.     Under the Storage Agreement, SSgt Acevedo agreed to rent storage cube A1053 (the "Space") at the Causeway Facility. The monthly rent for the Space was $296.65, which the Storage Agreement authorized CubeSmart to automatically charge to SSgt Acevedo's credit card.

28.     The first page of the Storage Agreement had a box to check if the customer was a "Military Member" and a blank to complete for "End of Active

Service date." SSgt Acevedo checked the box indicating that she was a "Military Member" and listed her "End of Active Service Date" as November 29, 2025.

29.     SSgt Acevedo also completed and executed a "Military Rider" to the Storage Agreement, which asked her to provide her date of birth and details of her military service, including contact information for her military unit, and to designate an agent to whom she gave "the express authority to take any and all actions, and make any and all decisions, with respect to the Space and Agreement" on her behalf.

30.     On July 15, 2022, SSgt Acevedo deployed to Jordan, leaving nearly all of her household goods stored in the Space at the Causeway Facility.

31.     SSgt Acevedo estimates the monetary value of the stored goods at approximately $29,000. She also stored many irreplaceable items of great sentimental value, including her military awards and coins, sonogram pictures of her pregnancies, and her children's toys and keepsakes.

32.     On or about August 9, 2022, the Causeway Facility was sold to MSC Causeway, LLC, a special purpose entity affiliated with Morningstar.

33.     Following the sale of the Causeway Facility in August 2022, Morningstar took over the management and operation of the Causeway Facility from CubeSmart.

34.     Prior to the sale, rent for the Space had been charged automatically to SSgt Acevedo's credit card.

35.     Following the sale, Morningstar failed to obtain customer payment information from CubeSmart, which resulted in SSgt Acevedo's automatic rent payments being turned off.

36.     Between August 2022 and December 2022, Morningstar sent several emails to SSgt Acevedo's personal email address regarding the rent for the Space.

37.     Between August 2022 and December 2022, SSgt Acevedo was deployed overseas and did not read Morningstar's emails. As a result, SSgt Acevedo was unaware that her automatic rent payments had been turned off.

38.     Morningstar did not contact SSgt Acevedo's designated agent or her military unit to alert them to the fact that SSgt Acevedo's automatic rent payments had been turned off.

39.     On December 30, 2022, Morningstar sold SSgt Acevedo's personal property at public auction for $390.

40.     On January 26, 2023, SSgt Acevedo returned from her deployment. Shortly thereafter, she arranged for a moving company to move her property out of the Space. When she arrived at the Causeway Facility, she was informed that the contents of the Space had been sold at a public auction and all her belongings had been sold or destroyed.

### *Other Aggrieved Servicemembers*

41.     In addition to SSgt Acevedo, from April 2020, through the date of filing of this Complaint, Morningstar has auctioned or otherwise disposed of the personal property or effects of at least two other SCRA-protected servicemembers.

42.     On November 13, 2020, U.S. Army Sergeant (SGT) Leon Jenkins rented storage unit #536 at the Hardscrabble Facility.

43.     SGT Jenkins entered military service on September 21, 2015, and is still serving on active duty.

44.     On June 23, 2022, Morningstar sold the contents of SGT Jenkins' storage unit at a public auction.

45.     The "Notes History" associated with SGT Jenkins' unit indicates that two days prior to the auction, SGT Jenkins told Morningstar employees that he wanted to remove his "military items" from the unit.

46.     On January 6, 2022, U.S. Army Servicemember Tavaris Gilbert rented storage unit #3217 at the DeLand Facility.

47.     Servicemember Gilbert entered military service on June 27, 2022, and is still serving on active duty.

48.     On September 9, 2022, Morningstar sold the contents of Servicemember Gilbert's storage unit at a public auction.

9

49.     Photographs of **unit #3217** taken by Morningstar prior to the auction clearly show a military duffel bag with the initials "US" stamped on the side.

**50.**     Upon information and belief, Morningstar may have foreclosed or enforced liens on the property or effects of other SCRA-protected servicemembers, without court orders, during a period of military service of the servicemember or within 90 days thereafter.

### VIOLATIONS OF THE SERVICEMEMBERS CIVIL RELIEF ACT

51.     Plaintiff re-alleges and incorporates by reference the allegations set forth above.

52.     By the conduct described in the foregoing paragraphs, Morningstar has enforced liens on the property and effects of SCRA-protected servicemembers without authorizing court orders, in violation of 50 U.S.C. § 3958.

53.     The SCRA provides two alternative bases under which the Attorney General may sue to enforce the statute, either one of which is sufficient to support this lawsuit.

54.     By auctioning the personal property and effects of SCRA-protected servicemembers without court orders, Morningstar has both:

a.  engaged in a pattern or practice of violating Section 3958(a)(1) of the SCRA, 50 U.S.C. § 3958(a)(1), thus triggering the Attorney General's authority to sue under 50 U.S.C. § 4041(a)(1); and

b.  engaged in violations of Section 3958(a)(1) that raise an issue of significant public importance, thus triggering the Attorney General's authority to sue under 50 U.S.C. § 4041(a)(2).

55.    The servicemembers whose personal property and effects were auctioned, sold, or otherwise disposed of without authorizing court orders in violation of the SCRA are aggrieved persons pursuant to 50 U.S.C. § 4041(b)(2) and have suffered damages as a result of Morningstar's conduct.

56.    Morningstar's conduct was intentional, willful, and taken in disregard for the rights of servicemembers.

## **RELIEF REQUESTED**

WHEREFORE, the United States requests that the Court enter an ORDER that:

1.    Declares that Morningstar's conduct violated the SCRA;

2.    Enjoins Morningstar, its agents, employees, and successors, and all other persons and entities in active concert or participation with it, from:

a.    enforcing liens on the property and personal effects of SCRA-protected servicemembers without court orders, in violation of the SCRA, 50 U.S.C. § 3958;

      b.      failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, all identifiable victims of Morningstar's illegal conduct to the position they would have been in but for that illegal conduct; and

      c.      failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any illegal conduct in the future and to eliminate, to the extent practicable, the effects of Morningstar's illegal conduct;

3.      Awards appropriate monetary damages to all identifiable victims of Morningstar's violations of the SCRA, pursuant to 50 U.S.C. § 4041(b)(2); and

4.      Assesses civil penalties against Morningstar to vindicate the public interest, pursuant to 50 U.S.C. § 4041(b)(3).

The United States prays for such additional relief as the interests of justice may require.

## DEMAND FOR JURY TRIAL

The United States demands trial by jury in this action on all issues so triable.

Dated:        September 19, 2024                    Respectfully submitted,

                                                    MERRICK B. GARLAND
                                                    Attorney General

ROGER B. HANDBERG                                   KRISTEN CLARKE
United States Attorney                              Assistant Attorney General
Middle District of Florida                          Civil Rights Division

                                                    _/s/ Audrey M. Yap_____
YOHANCE A. PETTIS                                   CARRIE E. PAGNUCCO, Chief
Deputy Chief, Civil Division                        ELIZABETH A. SINGER, Director
Florida Bar No. 021216                              U.S. Attorneys' Fair Housing Program
United States Attorney's Office                     AUDREY M. YAP[1]
Middle District of Florida                          Hawaii Bar No. 9060
400 North Tampa St., Suite 3200                     Trial Attorney
Tampa, FL 33602                                     U.S. Department of Justice
Phone: (813) 274-6000                               Civil Rights Division
Facsimile: (813) 274-6198                           Housing and Civil Enforcement
YPettis@usa.doj.gov                                 Section
                                                    950 Pennsylvania Ave, 4CON
_/s/  Alexandra N. Karahalios_____                Washington, DC 20530
ALEXANDRA N. KARAHALIOS                             Telephone: (202) 514-4713
Assistant U.S. Attorney                             Facsimile: (202) 514-1116
Florida Bar No. 1055229                             Audrey.Yap@usdoj.gov
United States Attorney's Office
Middle District of Florida
35 SE 1st Ave Ste 300
Ocala, FL 34471-2177
Phone: (352) 547-3600
Facsimile: (352) 547-3623
Akarahalios@usa.doj.gov


Attorneys for the UNITED STATES OF AMERICA

---

[1] Pursuant to Local Rule 2.02(a), the United States of America hereby designates Audrey M. Yap as lead counsel in this matter.